IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**HILLARY HOFFNER**,

**Plaintiff,**

v.

**DAVID BARNHARDT, individually, and
ASSOCIATED LUMBER INDUSTRIES, INC.**

**Defendants.**                                    No. 12-cv-239-DRH

<u>ORDER</u>

**HERNDON, Chief Judge:**

At issue here is whether plaintiff Hillary Hoffner has alleged three separate counts or whether her constructive discharge count under count III is already encompassed in her Title VII Civil Rights Act and Illinois Human Rights Act claims, counts I and II respectively.  Defendant, Associated Lumber Industries, Inc., filed a motion to dismiss count III (Doc. 29), contending that count III fails to state a claim upon which relief can be granted or is duplicative of count I and II.  Plaintiff contends that count I is for constructive discharge based on federal law, specifically Title VII, that count II states a cause of action for the creation of a hostile work environment due to the sexual harassment of defendant's employee in violation of the Illinois Human Rights Act, and that count III states a cause of action under Illinois state law for constructive discharge.  Therefore, plaintiff concludes that count III is not duplicative as count II alleges a violation of Illinois state law and count I alleges a violation of federal law.  Furthermore, plaintiff maintains that count III is not duplicative of count II because count II does not require plaintiff to be constructively

discharged from her employment in order to state a cause of action. The Court agrees with plaintiff and therefore denies defendant's motion to dismiss count III (Doc. 29).

## I. Background

On March 16, 2012, plaintiff filed a three count complaint against D a v i d Barnhardt, individually, and Associated Lumber Industries, Inc. (collectively "defendants"), alleging claims for 1) violation of Title VII, specifically sexual harassment and a hostile work environment, 2) violation of the Illinois Human Rights Act, specifically sexual harassment pursuant to 775 ILCS 5/2-102(D), and 3) constructive discharge. In plaintiff's complaint, the facts which we take as true at this point, plaintiff alleges generally that she was employed by defendant, an employer under the Civil Rights Act of 1964, as a cashier from approximately June 15, 2011, through August 22, 2011. She asserts that during that time, Barnhardt, an assistant manager for defendant, was her direct supervisor, and that throughout plaintiff's employment, plaintiff was continually subjected to sexual harassment by Barnhardt. For example, plaintiff contends that at the outset of plaintiff's employment, Barnhardt told her that he was "apologizing in advance" because he knew he would say some things that would offend plaintiff and he simply wanted to get the apology out the way. Barnhardt allegedly made plaintiff climb a ladder to get an item for a customer and told the customer that plaintiff had to climb the ladder because he was "in charge of [p]laintiff and she had to do what he asked, even if that meant climbing a ladder or bending over for him." Plaintiff claims that Barnhardt

told her he was going to "release some bodily fluids" and that plaintiff "did not need to worry because it was not the fluid [p]laintiff was probably looking for, he simply had to urinate." She alleges that while she was bent over cleaning out a bottom drawer, Barnhardt walked over, stood right next to plaintiff, started looking down her shirt, and when another employee noticed and asked plaintiff to stand up, Barnhardt walked away, saying he had "already gotten what he wanted." She writes that on numerous occasions, Barnhardt repeatedly requested to hug her, despite plaintiff's consistent refusal, that while plaintiff was removing items from a box on the floor, Barnhardt positioned himself directly behind plaintiff and stood so close that plaintiff's mid-section came into contact with his mid-section as plaintiff attempted to stand up, and that while in a position where plaintiff could overhear Barnhardt's conversation, Barnhardt asked another employee if he was sexually involved with plaintiff and subsequently stated that he would be if plaintiff would let him.

Plaintiff alleges that Barnhardt continually asked her if "hairy, fat men turned her on" and stood near plaintiff stretching out his arms asking "doesn't this turn you on at all." Plaintiff asserts that she and Barnhardt were discussing the fact that plaintiff had lost a significant amount of weight and Barnhardt indicated that he "didn't want to have to think about [p]laintiff being heavier because that ruined the thoughts in his head," and that when plaintiff requested that Barnhardt not think about plaintiff in that manner, Barnhardt smiled and indicated that he was not going to stop. Lastly, plaintiff alleges that as she was restocking an item in an aisle,

Barnhardt walked up and stood directly in front of plaintiff and proceeded to stare directly at plaintiff's chest and move his head up and down her body, and that when plaintiff asked if there was anything he needed, Barnhardt indicated that he needed plaintiff to remove an item off of the bottom shelf and proceeded to stand directly behind plaintiff and watch her bend over to get the item from the shelf.

Plaintiff alleges that she repeatedly complained to Barnhardt about his actions and requested that he stop harassing plaintiff, that on numerous occasions plaintiff discussed Barnhardt's conduct with Arthur Mize, the general manager of the facility where plaintiff was employed, and that plaintiff was continually harassed by Barnhardt after she complained to Mize. Plaintiff asserts that all of the sexual conduct was unwanted and unwelcome by plaintiff, and that the continuing and unwelcome sexual conduct was sufficiently severe and pervasive so as to alter the terms and conditions of plaintiff's employment and created an intimidating and offensive work environment. Further, plaintiff contends that defendant Associated Lumber Industries, Inc., either did not have a policy in place to address this form of sexual harassment or otherwise never advised plaintiff of the existence of the same, that despite plaintiff's complaints, defendant did not take the appropriate corrective measure to prevent the sexual harassment, and due to the sexual harassment and Associated Lumber Industries, Inc.'s failure to prevent the continuing harassment, plaintiff was forced to resign from her position. Plaintiff maintains that defendants' conduct was intentional or otherwise involved a reckless indifference to plaintiff's federal protected rights to be free from sexual harassment, caused plaintiff severe

emotional pain and suffering including emotional distress, inconvenience, stress, and loss of enjoyment of life.

In count I, plaintiff alleges that as a result of the hostile work environment created by defendants, plaintiff had no other means to avoid the unwanted sexual harassment other than to resign from her position, and therefore, plaintiff was "constructively discharged" from her employment by defendants' actions. Plaintiffs claims that the conduct of defendants and their failure to take prompt investigative and remedial action to prevent plaintiff's continued harassment deprived her of her statutory rights under 42 U.S.C. § 2000e *et seq*. Plaintiff maintains that the unlawful employment practices complained of and the actions of defendants were willful, wanton, and intentional or otherwise committed with reckless indifference to plaintiff's statutorily protected rights, entitling plaintiff to compensatory damages and punitive damages to punish defendants for their actions and to deter them and others from such actions in the future. Plaintiff contends the defendants' actions have made reinstatement to the position ineffective, thereby entitling plaintiff to front pay in lieu of reinstatement.

In count II, plaintiff alleges that her direct supervisor Barnhardt created a hostile working environment and sexually harassed plaintiff in violation of the Illinois Human Rights Act, specifically 775 ILCS 5/2-102(D). Because Barnhardt was plaintiff's direct supervisor, plaintiff contends that Associated Lumber Industries, Inc. is strictly liable for the sexual harassment of its employee.

Lastly, in count III, plaintiff alleges that defendants subjected plaintiff to sexual

harassment and created a hostile work environment, that plaintiff was forced to resign her employment because defendants' sexual harassment created work conditions that a reasonable person in plaintiff's position would have found to be intolerable, and that the intentional acts of Barndhart and Associated Lumber Industries, Inc.'s failure to remedy the sexual harassment forced her to resign.

## II. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a motion to dismiss, a complaint must establish a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations of the complaint must be sufficient "to raise a right to relief above the speculative level." *Id*.

In making this assessment, the district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. See *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007), *cert. denied,* 553 U.S. 1032 (2008). Even though *Twombly* (and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint: "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that

he is entitled to relief.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

Neither party took the time to set forth any case law in support of their respective positions, and the Court refuses to construct arguments on behalf of the parties. See *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995) ("This court has no duty to research and construct legal argument available to a party."); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n. 5 (7th Cir. 1992) ("[C]ompelling the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources."). For that reason alone, the motion should be denied. See SDIL-LR 7.1(d) ("All briefs shall contain a short, concise statement of the party's position, together with citations to relevant legal authority and to the record."). And, in any event, the Court finds that plaintiff's count II does not require plaintiff be constructively discharged and has found Illinois case law to support a claim for constructive discharge under count III. See *Motley v. Ill. Human Rights Comm'n*, 263 Ill. App. 3d 367, 373 (Ill. App. Ct. 1994) ("Constructive discharge occurs when an employee's working conditions are made so intolerable by the employer that the employee, acting as a reasonable person, is compelled to resign."); see also *Bd. of Directors, Green Hills Country Club v. Human Rights Comm'n*, 162 Ill. App. 3d 216, 220 (Ill. App. Ct. 1987); *Steele v. Human Rights Comm'n*, 160 Ill. App. 3d 577, 581 (Ill. App. Ct. 1987). The Court will not craft any further arguments nor perform more legal research for the parties. See *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 842 (7th Cir. 2010) ("In making this argument, [plaintiff] fails to

comply with Federal Rule of Appellate Procedure 28(a)(9)(A), which requires the appellant's argument to contain 'contentions and the reasons for them, with citations to authorities and parts of the record on which the appellant relies.' We will not fill this void by crafting arguments and performing the necessary legal research."). Accordingly, the motion to dismiss (Doc. 29) is denied.

**IT IS SO ORDERED.**

Signed this 2nd day of October, 2012.

Digitally signed by
David R. Herndon
Date: 2012.10.02
14:17:03 -05'00'

**Chief Judge
United States District Court**